UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

OWEN Q. McALLISTER, SR.,                       :

                Plaintiff,         :

   -against-                                   :

OFFICER P. GARRETT, #703;                       :
OFFICER GIBBS, Booking Officer;
SERGEANT YANKOWSKI, Booking Sgt.;   :
CAPTAIN RAY RHODES, Disciplinary
Hearing Officer; ANTHONY AMICUCCI,  :
Warden; SERGEANT PARADISO, # 150;
OFFICER ROBINSON; OFFICER KALIDIS;  :
E.R.T.; VALHALLA CORRECTIONAL
FACILITY,                                       :

                Defendants.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

10 Civ. 3828 (RJH)(HBP)

MEMORANDUM
OPINION AND ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC. #:
DATE FILED: 9/1/11

       PITMAN, United States Magistrate Judge:

## I.   Introduction

       Plaintiff, a pro se prisoner, commenced this action under 42 U.S.C. § 1983, alleging violations of his due process rights and his right to be free from cruel and unusual punishment while he was incarcerated at Westchester County Department of Correction ("WCDOC") in Valhalla, New York.  By motion dated August 18, 2010 (Docket Item 5), petitioner seeks to have counsel appointed to represent him pursuant to 28 U.S.C. § 1915(e)(1).  +

For the reasons set forth below, the motion is denied without
prejudice to renewal.

II.   Background

        The WCDOC is a prison consisting "of a Jail Division,
which houses individuals 16 years and older (including males
accused of a crime or awaiting sentencing . . .) and a Peniten-
tiary Division, which houses males sentenced to terms of one year
or less."  WCDOC, About Us, available at http://correc-
tion.westchestergov.com/about-us.  Plaintiff's claims arise from
an incident that allegedly occurred on December 17, 2009, when
plaintiff was told he would be moved into the Penitentiary
Division (Complaint, filed May 10, 2010 (Docket Item 2), at
II.D.).  Plaintiff alleges he was moved out of the Penitentiary
Division in April 2009 because he had previously submitted
grievances against Officers Wyatt and Garrett (Complaint at
II.D.).  Plaintiff does not identify these officers by first name
or otherwise explain why he filed grievances against them, except
to say there was an "ongoing situation" (Complaint at II.D.).
Plaintiff claims an altercation with Garrett in April 2009
resulted in a disciplinary charge and his move out of the Peni-
tentiary Division (Complaint at II.D.).  From April 2009 to
December 17, 2009, plaintiff lived in the "old part" of the WCDOC

2

rather than the Penitentiary Division, which presumably means the Jail Division (Complaint at II.D.).

On December 17, 2009, plaintiff allegedly told several officers that he should not be moved back to the Penitentiary Division (Complaint at II.D.). One officer told him his situation with Garrett was not documented (Complaint at II.D.). While being escorted to the Penitentiary Division, plaintiff informed another officer about his situation with Garrett. Upon reaching the main corridor, Garrett allegedly said, "here comes that asshole McAllister, get the fuck in the Bullpen" (Complaint at II.D.). Plaintiff responded by calling Garrett a "pussy" (Complaint at II.D.). As plaintiff was informing Sergeant Paradiso that he should not be in the Penitentiary Division, Garrett grabbed plaintiff's right arm "very aggressively" (Complaint at II.D.). Plaintiff yanked his arm away from Garrett, who grabbed the front of plaintiff's shirt and tried to wrestle plaintiff to the ground (Complaint at II.D.). An Emergency Response Team ("ERT") responded, and plaintiff was moved to the Special Housing Unit ("SHU") of WCDOC (Complaint at II.D.). Plaintiff claims he remained in SHU from that day until the time he signed his complaint on March 16, 2010, 89 days after the incident (Complaint at II.D. & 7).

3

Later on the day of December 17, 2009, three disciplinary charges were leveled against plaintiff:  (1) acting with intent to cause inconvenience, annoyance or harm; (2) disobedience of orders, and (3) interference with a staff member's performance of duties or functions by physical intimidation, including but not limited to menacing a staff member (Complaint at II.D.).[1]  On December 18, 2009, plaintiff claims he received a second copy of the disciplinary report that was similar to the copy he had previously received except that it did not state that the ERT had responded, added that Garrett sustained a fractured wrist and added a fourth charge of causing substantial bodily injury to a correctional officer (Complaint at II.D.).  Plaintiff claims both reports are procedurally flawed and erroneous (Complaint at II.D.).  He states that he was charged in New York State court with assault in the second degree following the altercation with Garrett (Complaint at II.D.).

Plaintiff claims that a subsequent disciplinary hearing conducted by Captain Ray Rhodes on December 30, 2009, was "very bogus and non impartial" and violated his due process right to a fair and impartial hearing (Complaint at II.D.).  Plaintiff

---

[1]Plaintiff claims four disciplinary charges were initially leveled against him, but I conclude that what he believes to be the third and fourth charges are really only one charge.

4

contends that he was not able to call witnesses on his behalf, was denied the right to introduce videotaped evidence of the altercation and was denied the right to have a hearing in a secluded area or private setting.  He states that Rhodes found him guilty of the original charges in the disciplinary hearing but found plaintiff not guilty of causing substantial bodily injury to a correctional officer on a "technicality" (Complaint at II.D.).  Plaintiff claims numerous witnesses saw the incident, and that cameras in the main corridor recorded the incident on videotape.

Plaintiff claims he suffered an eye injury in the altercation with Garrett (Complaint at III).  In his complaint, plaintiff states that the damage consists of "pain, cloudy vision, not being able to focus, objects are distorted" (Complaint at III).  In his motion for counsel, plaintiff states that he underwent surgery to have his retina reattached (Application for the Court to Request Counsel, dated August 18, 2010 (Docket Item 5), at ¶ 2).

Based on the narratives from his complaint and motion to obtain counsel, plaintiff appears to be alleging four categories of constitutional violations:  (1) that officers Robinson, Kalidas, Gibbs, Sergeants Yankowski and Paradiso, Captain Rhodes and Superintendent Amicucci were deliberately indifferent to

conditions that posed a substantial risk of serious harm to his
physical well-being, given their knowledge of prior harassment of
plaintiff by Garrett; (2) that Garrett used excessive force in
violation of plaintiff's Eighth Amendment right against cruel and
unusual punishment; (3) that plaintiff's Due Process rights were
violated by the administrative hearing, and (4) that plaintiff's
confinement in SHU represented cruel and unusual punishment (see
Complaint at II.D.; Application for the Court to Request Counsel
at 4).  Plaintiff seeks compensation for his pain and suffering,
for being falsely accused of a crime, for being confined in the
SHU and for restitution in the amount of $25 from the guilty
verdicts in the disciplinary charges against him (Complaint at
V.).

        By notice of motion filed July 29, 2011, defendants
move to dismiss on the following grounds:  (1) plaintiff failed
to serve defendants within 120 days of filing the complaint,
pursuant to Federal Rule of Civil Procedure 4(m); (2) plaintiff
failed to state a claim of a constitutional deprivation; (3)
plaintiff failed to exhaust his administrative remedies as
required by the Prison Litigation Reform Act ("PLRA"); (4)
plaintiff fails to state a claim under the Eighth Amendment;
(5) plaintiff failed to allege personal involvement of Gibbs,
Robinson, Kalidas, Yankowski, Paradiso, Rhodes and Amicucci; (6)

6

plaintiff failed to state a claim of a Due Process violation; (7)

defendants are entitled to qualified immunity, and (8) plaintiff

failed to allege that any constitutional rights violation re-

sulted from a municipal policy or custom of the county (Memoran-

dum of Law in Support of County Defendants' Motion to Dismiss,

dated July 29, 2011 (Docket Item 17) (Defs.' Memo).

III.  <u>Analysis</u>

    A.  Applicable Legal Standards
        <u>for the Appointment of Counsel</u>

      Pursuant to 28 U.S.C. § 1915(e)(1), "[t]he court may

request an attorney to represent any person unable to afford

counsel."  However, "[t]here is no requirement that an indigent

litigant be appointed <u>pro</u> <u>bono</u> counsel in civil matters, unlike

most criminal cases."  <u>Burgos v. Hopkins</u>, 14 F.3d 787, 789 (2d

Cir. 1994) (citing 28 U.S.C. § 1915).  The factors to be consid-

ered in ruling on a motion for <u>pro</u> <u>bono</u> counsel are well settled

and include "the merits of plaintiff's case, the plaintiff's

ability to pay for private counsel, [the plaintiff's] efforts to

obtain a lawyer, the availability of counsel, and the plaintiff's

ability to gather the facts and deal with the issues if unas-

sisted by counsel."  <u>Cooper v. A. Sargenti Co.</u>, 877 F.2d 170, 172

(2d Cir. 1989) (<u>per</u> <u>curiam</u>).  Of these, "[t]he factor which

command[s] the most attention [is] the merits." Cooper v. A.
Sargenti Co., supra, 877 F.2d at 172.   Accord Odom v. Sielaff, 90
Civ. 7659 (DAB), 1996 WL 208203 at *1 (S.D.N.Y. Apr. 26, 1996)
(Batts, D.J.); see Berry v. Kerik, 366 F.3d 85, 88 (2d Cir.
2004).   As noted over twenty years ago by the Court of Appeals:

> Courts do not perform a useful service if they appoint
> a volunteer lawyer to a case which a private lawyer
> would not take if it were brought to his or her atten-
> tion.   Nor do courts perform a socially justified
> function when they request the services of a volunteer
> lawyer for a meritless case that no lawyer would take
> were the plaintiff not indigent.

Cooper v. A. Sargenti Co., supra, 877 F.2d at 174; see also
Hendricks v. Coughlin, 114 F.3d 390, 392 (2d Cir. 1997) ("In
deciding whether to appoint counsel . . . the district judge
should first determine whether the indigent's position seems
likely to be of substance." (citation and internal quotation
marks omitted)).

> The Court of Appeals for the Second Circuit has
> stated in various ways the applicable standard for
> assessing the merits of a pro se litigant's claim.   In
> Hodge [v. Police Officers, 802 F.2d 58 (2d Cir. 1986)],
> [the Court of Appeals] noted that "[e]ven where the
> claim is not frivolous, counsel is often unwarranted
> where the indigent's chances of success are extremely
> slim," and advised that a district judge should deter-
> mine whether the pro se litigant's "position seems
> likely to be of substance," or showed "some chance of
> success."   Hodge, 802 F.2d at 60-61 (internal quotation
> marks and citation omitted).   In Cooper v. A. Sargenti
> Co., [the Court of Appeals] reiterated the importance
> of requiring indigent litigants seeking appointed

counsel "to first pass the test of likely merit."   877
F.2d 170, 173 (2d Cir. 1989) (per curiam).

Ferrelli v. River Manor Health Care Ctr., 323 F.3d 196, 204

(2d Cir. 2003).

B.   Application of the Foregoing
Principles to Plaintiff's Motion

Petitioner has already established that he lacks the
resources to obtain counsel, as his leave to proceed in forma
pauperis was granted on May 7, 2010, by the Honorable Loretta A.
Preska, United States District Judge (Docket Item 1).   Plaintiff
claims he needs an attorney because he is not well versed in
civil litigation, the retina in his right eye needed to be
reattached -- which presumably indicates a difficulty or discom-
fort in reading documents with respect to this lawsuit -- and he
was in "keeplock status" at the time of the present motion
(Application for the Court to Request Counsel at ¶ 2).   Further-
more, plaintiff claims the recovery from eye surgery and his
uncontrolled high blood pressure has kept him from finding an
attorney.

However, it does not appear at this time that peti-
tioner's claims are sufficiently meritorious to warrant the
appointment of counsel.   Given the record before me, however, I
conclude that even if plaintiff's claim cannot quite be described

as frivolous, his "chances of success are extremely slim."
Ferrelli v. River Manor Health Care Ctr., supra, 323 F.3d at 204,
quoting Hodge v. Police Officers, supra, 802 F.2d at 60 (internal
quotation marks and citation omitted).  As a threshold matter, it
appears unlikely that plaintiff has exhausted his administrative
remedies as required by the PLRA, 42 U.S.C. § 1997e(a), with
respect to the deliberate indifference and excessive force
claims.  Plaintiff's Due Process and cruel and unusual punishment
claims appear similarly unlikely to succeed because of a failure
to state a claim.

      1.   Claims Unlikely to Succeed
          Because of a Lack of
          Administrative Exhaustion

      The PLRA, 42 U.S.C. § 1997e(a) provides that "[n]o
action shall be brought with respect to prison conditions under
section 1983 of this title, or any other Federal law, by a
prisoner confined in any jail, prison, or other correctional
facility until such administrative remedies as are available are
exhausted."  "The purpose of the PLRA is 'to reduce the quantity
and improve the quality of prisoner suits . . . [and to afford]
corrections officials time and opportunity to address complaints
internally before allowing the initiation of a federal case.'"
Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006), quoting

10

Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004); see Marvin

v. Goord, 255 F.3d 40, 42 (2d Cir. 2001) (per curiam); Johnson v.

Bendheim, 00 Civ. 720 (JSR), 2001 WL 799569 at *4 (S.D.N.Y. July

13, 2001) (Rakoff, D.J.) (adopting Report and Recommendation of

Fox, M.J.); Grey v. Sparhawk, 99 Civ. 9871 (HB), 2000 WL 815916

at *1 (S.D.N.Y. June 23, 2000) (Baer, D.J.).

> Courts have interpreted the [PLRA] to require complete
> exhaustion in accordance with institutional procedures.
> See, e.g., Sulton v. Greiner, 2000 WL 1809284 (S.D.N.Y.
> Dec. 11, 2000) (granting summary judgment where pris-
> oner failed to appeal to the CORC); Petit v. Bender,
> 2000 WL 303280, at *2-3 (S.D.N.Y. March 22, 2000)
> (prisoner who only partially complied with the griev-
> ance procedures failed to exhaust his administrative
> remedies.); Santiago v. Meinsen, 89 F. Supp. 2d 435
> (S.D.N.Y. 2000) (prisoners must challenge the condi-
> tions of their confinement through the highest level of
> available administrative avenues prior to filing suit).
> This requirement applies even when plaintiffs seek a
> remedy that cannot be awarded by the administrative
> body hearing the complaint.

Graham v. Cochran, 96 Civ. 6166 (LTS)(RLE), 2002 WL 31132874 at

*6 (S.D.N.Y. Sept. 25, 2002) (Swain, D.J.) (adopting Report &

Recommendation of Ellis, M.J.); see also Vidal v. Gorr, 02 Civ.

5554 (LAK), 2003 WL 43354 at *1 (S.D.N.Y. Jan. 6, 2003) (Kaplan,

D.J.); Beatty v. Goord, 210 F. Supp. 2d 250, 252-53 (S.D.N.Y.

2000) (Berman, D.J.).

The exhaustion requirement "applies to all inmate suits

about prison life, whether they involve general circumstances or

particular episodes, and whether they allege excessive force or

some other wrong." Porter v. Nussle, supra, 534 U.S. at 532.   In

addition, the PLRA applies to claims asserted by pretrial detain-

ees as well as sentenced prisoners.   See United States v. Al-

Marri, 239 F. Supp. 2d 366, 367-68 (S.D.N.Y. 2002) (Marrero,

D.J.); Rivera v. State of New York, 96 Civ. 7697 (RWS), 1999 WL

13240, at *4-*5 (S.D.N.Y. Jan. 12, 1999) (Sweet, D.J.).   The

PLRA's exhaustion requirement must be met before plaintiff's

complaint is filed.   Neal v. Goord, 267 F.3d 116, 122 (2d Cir.

2001) ("[G]rievances must now be fully pursued prior to filing a

complaint in federal court."), overruled in part on other

grounds, Porter v. Nussle, supra, 534 U.S. at 532; Pugh v. Goord,

571 F. Supp. 2d 477, 490 (S.D.N.Y. 2008) (Sullivan, D.J.);

Schwartz v. Dennison, 518 F. Supp. 2d 560, 568 (S.D.N.Y. 2007)

(Holwell, D.J.), aff'd, 339 F. App'x 28 (2d Cir. 2009).

        "While 'our circuit has recognized that . . . the

PLRA's exhaustion requirement is mandatory, certain caveats

apply.'"   Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004),

quoting Giano v. Goord, supra, 380 F.3d at 677 (citation and

internal quotation marks omitted).

> [A] three-part inquiry is appropriate in cases where a
> prisoner plaintiff plausibly seeks to counter defen-
> dants' contention that the prisoner has failed to
> exhaust available administrative remedies as required
> by the PLRA, 42 U.S.C. § 1997e(a).   Depending on the
> inmate's explanation for the alleged failure to ex-
> haust, the court must ask whether administrative reme-

dies were in fact "available" to the prisoner. Abney v.
McGinnis, 380 F.3d 663, 2004 WL 1842647.  The court
should also inquire as to whether the defendants may
have forfeited the affirmative defense of non-exhaus-
tion by failing to raise or preserve it, Johnson v.
Testman, 380 F.3d 691, 2004 WL 1842669, or whether the
defendants' own actions inhibiting the inmate's exhaus-
tion of remedies may estop one or more of the defen-
dants from raising the plaintiff's failure to exhaust
as a defense, Ziemba[v. Wezner], 366 F.3d [161, 163 (2d
Cir. 2004)].  If the court finds that administrative
remedies were available to the plaintiff, and that the
defendants are not estopped and have not forfeited
their non-exhaustion defense, but that the plaintiff
nevertheless did not exhaust available remedies, the
court should consider whether "special circumstances"
have been plausibly alleged that justify "the pris-
oner's failure to comply with administrative procedural
requirements."  Giano v. Goord, 380 F.3d 670, 2004 WL
1842652 (citing Berry v. Kerik, 366 F.3d 85, 88 (2d
Cir. 2003); Rodriguez order).

Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004); see

Macias v. Zenk, 495 F.3d 37, 41 (2d Cir. 2007); Brownell v. Krom,

446 F.3d 305, 311-12 (2d Cir. 2006).

        "Where a plaintiff alleges that the defendant made

misrepresentations that inhibited the plaintiff from participat-

ing in the grievance process, dismissal of the complaint for

failure to exhaust is not appropriate." Sereika v. Patel, 411 F.

Supp. 2d 397, 403 (S.D.N.Y. 2006) (Marrero, D.J.), citing

Feliciano v. Goord, 97 Civ. 0263, 1998 WL 436358 at *2 (S.D.N.Y.

July 27, 1998) (Cote, D.J.) and Davis v. Frazier, 98 Civ. 2658

(HB), 1999 WL 395414 at *4 (S.D.N.Y. June 15, 1999) (Baer, D.J.).

Indeed, "a plaintiff may assert estoppel, and exhaustion may be

13

excused, if he has been led to believe that an incident was not a grievance matter and would be otherwise investigated or that filing a grievance would be futile." Rivera v. Goord, 253 F. Supp. 2d 735, 747 (S.D.N.Y. 2003) (Chin, D.J.). Similarly, "where a prisoner has made a 'reasonable attempt' to file a grievance, and prison officials have prevented the prisoner from filing that grievance, the grievance procedures are not 'available' to the defendant, and thus the [PLRA] does not preclude the prisoner from suing in federal court." Thomas v. New York State Dep't of Corr. Servs., 00 Civ. 7163 (NRB), 2002 WL 31164546 at *3 (S.D.N.Y. Sept. 30, 2002) (Buchwald, D.J.) (citations omitted); see Hollman v. Lindsay, 08-CV-1417 (NGG), 2009 WL 3112076 at *10 (E.D.N.Y. Sept. 25, 2009); Gayle v. Benware, 08 Civ. 8017 (RMB)(FM), 2009 WL 2223910 at *5 (S.D.N.Y. July 27, 2009) (Berman, D.J.) (adopting Report & Recommendation of Maas, M.J.).

In the Second Circuit, "'[a]lert[ing] the prison officials as to the nature of the wrong for which redress is sought' . . . does not constitute 'proper exhaustion.'" Macias v. Zenk, 495 F.3d 37, 44 (2d Cir. 2007), quoting Braham v. Clancy, 425 F.3d 177, 184 (2d Cir. 2005), and Woodford v. Ngo, 548 U.S. 81, 94-95 (2006); accord Bennett v. Onua, 09 Civ. 7227 (SAS), 2010 WL 2159199 at *2 (S.D.N.Y. May 26, 2010) (Scheindlin, D.J.) (footnotes omitted). Even where a plaintiff states broadly

14

that he submitted letters or made oral requests or complaints
about the issues underlying an action, such measures also fail to
satisfy the PLRA's exhaustion requirement. Harrison v. Goord, 07
Civ. 1806 (HB), 2009 WL 1605770 at *8 (S.D.N.Y. June 9, 2009)
(Baer, D.J.); Arce v. Keane, 01 Civ. 2648 (BSJ), 2004 WL 439428
at *4 (S.D.N.Y. Mar. 9, 2004) (Jones, D.J.); see Singh v. Goord,
520 F. Supp. 2d 487, 495 (S.D.N.Y. 2007) (Robinson, D.J.).
Additionally, even an allegation that prison staff never re-
sponded to a prisoner's complaints does not excuse the exhaustion
requirement. Harrison v. Goord, supra, 2009 WL 1605770 at *8;
Clarke v. Thornton, 515 F. Supp. 2d 435, 440 (S.D.N.Y. 2007)
(Marrero, D.J.); Lashley v. Artuz, 01 Civ. 11542 (SAS), 2004 WL
1192090 at *2 (S.D.N.Y. May 27, 2004) (Scheindlin, D.J.).

The WCDOC has an established Inmate Grievance Procedure
("IGP"), in accordance with Part 7032 of the New York State
Commission of Correction ("NYSCOC") Minimum Standards (WCDOC
Policy and Procedure at 1). A "grievance" is defined as "a
written inmate complaint concerning either written or unwritten
facility policies, procedures, rules, practices, programs or the
action or inaction of any person within the facility. Disposi-
tions and sanctions resulting from disciplinary hearings and
administrative segregation housing decisions shall not be the
subject of a grievance" (WCDOC Policy and Procedure at III.A.).

15

According to the WCDOC Inmate Handbook Rules and Regulations, a prisoner may begin the grievance process by speaking to the Housing Unit Officer, who will log a complaint in the Complaint Log and attempt to resolve the matter on his own.  If the Housing Unit Officer cannot resolve the complaint, he will refer it to a supervisor for resolution.  If the supervisor is unable to satisfy the complaint, he will provide the prisoner with a grievance form.  However, WCDOC permits inmates to "request a grievance form at any time and not take part in the informal process.  Also[,] in an effort to provide a measure of 'confiden-tiality' to the process, inmates may submit a grievance in a sealed envelope" (WCDOC Inmate Handbook Rules and Regulations at 14-15).  The WCDOC grievance policy then proceeds through a seven-step process that includes written determinations and appeals (WCDOC Policy and Procedure at 4).

I conclude that plaintiff did not, in all likelihood, exhaust his administrative remedies with respect to the deliber-ate indifference and excessive force claims.  The assault by Garrett and the deliberate indifference by the other defendants clearly appear to be grievable matters because these alleged behaviors constitute "action or inaction of any person within the facility" (WCDOC Policy and Procedure at III.A.).  Moreover, plaintiff's description of his efforts to file a grievance is

16

inconsistent and incomplete.  In one part of his complaint,
plaintiff claims he filed a grievance while in the SHU (Complaint
at IV.F.).  He claims the grievance was filed about "[t]he entire
incident.  The incident itself and the damage to my eye" (Com-
plaint at IV.F.1.).  However, plaintiff also claims that his
"grievance was never filed nor taken into account" nor was it
logged (Complaint at IV.F.2, IV.F.3.).  Plaintiff also claims he
attempted to bring the situation to Warden Amicucci's attention
but received no response (Complaint at IV.G.1.).  Plaintiff
states that he made "unsuccessful attempts" to have his grievance
processed, alerted his doctor about his eye and also "made a
complaint" to numerous officers in the SHU, which he assumes were
written (Complaint at IV.I).

     Based on the record presently before me, it appears
likely that plaintiff, at most, complained informally as part of
WCDOC procedure.  Plaintiff never states that he attempted to
submit a written grievance form.  As noted above, the WCDOC has
procedures to allow prisoners to bypass the informal procedure or
to seek further relief if their complaints are not satisfied.
Plaintiff apparently never took the necessary steps to follow up
and file a formal grievance as required under the PLRA.  Further-
more, plaintiff at one point claims he "submitted documented
grievances" against Wyatt and Garrett in the past, prior to April

2009.  Therefore, it appears that plaintiff had some knowledge of
the formal grievance procedure.  Broad claims that a prisoner
submitted letters or made oral requests or complaints about the
issues underlying an action fail to satisfy the PLRA's exhaustion
requirement.  Harrison v. Goord, supra, 2009 WL 1605770 at *8;
Arce v. Keane, supra, 2004 WL 439428 at *4; see Singh v. Goord,
supra, 520 F. Supp. 2d at 495.  Similarly, even if plaintiff is
alleging that prison staff never responded to his complaints,
this does not excuse the exhaustion requirement, either.  Harri-
son v. Goord, supra, 2009 WL 1605770 at *8; Clarke v. Thornton,
supra, 515 F. Supp. 2d at 440; Lashley v. Artuz, supra, 2004 WL
1192090 at *2.  Furthermore, plaintiff provides no evidence that
defendants' "own actions inhibiting the inmate's exhaustion of
remedies [] estop one or more of the defendants from raising the
plaintiff's failure to exhaust as a defense."  Hemphill v. New
York, supra, 380 F.3d at 686 (citation omitted).  He submits no
evidence that he was prevented from filing a grievance by prison
officials or that misrepresentations were made to inhibit his
filing of a grievance.  Finally, plaintiff has not shown that
special circumstances exist that would justify his "failure to
comply with administrative procedural requirements" Hemphill v.
New York, supra, 380 F.3d at 686 (citation omitted).  Plaintiff's
physical condition does not qualify, because despite his vision

18

problems and high blood pressure, he was able to file a com-
plaint, a request to proceed in forma pauperis and a motion for
counsel in this Court.   Therefore, his deliberate indifference
claims and excessive force claims are likely to be dismissed for
failure to exhaust administrative remedies.   Because I conclude
that plaintiff's claims seem unlikely to be of substance or have
"some chance of success," Ferrelli v. River Manor Health Care
Ctr., supra, 323 F.3d at 204 (citation omitted), his motion with
respect to these claims is denied.

> 2.   Claims Likely to
>       Fail For Failure
>       to State a Claim

Plaintiff's claims that are likely to survive the
exhaustion analysis are (1) his claim that the administrative
hearing violated his Due Process rights, and (2) his claim that
confinement in SHU represented cruel and unusual punishment.
According to the WCDOC Policy and Procedure, "[d]ispositions or
sanctions from disciplinary hearings" and "[a]dministrative
segregation housing decisions" are not grievable issues (WCDOC
Policy and Procedure at 3-4).   Therefore, administrative remedies
were not available to the plaintiff under the PLRA for these
claims.   Hemphill v. New York, supra, 380 F.3d at 686 (citation
omitted).   However, I conclude that plaintiff has likely failed

19

to state a claim for both issues, and, therefore, plaintiff's motion is denied with respect to these remaining claims.

### a.   Due Process Claim

To establish a deprivation of Due Process during a disciplinary hearing, a prisoner "must show:  (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process.'" Thomas v. Calero, 09 Civ. 5209 (LTS)(MHD), 2011 WL 1532058 at *7 (S.D.N.Y. Mar. 17, 2011) (Dolinger, M.J.) (Report and Recommendation), adopted, 2011 WL 1532061 (S.D.N.Y. Apr. 20, 2011) (Swain, D.J.), quoting Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001) (citations and internal quotation marks omitted).  "States may under certain circumstances create liberty interests which are protected by the Due Process Clause. . . .  But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 483-84 (1995).

In Sandin v. Conner, supra, 515 U.S. at 486, the United States Supreme Court held that a prisoner's "discipline in

20

segregated confinement did not present the type of atypical,

significant deprivation in which a State might conceivably create

a liberty interest" where "disciplinary segregation, with insig-

nificant exceptions, mirrored those conditions imposed upon

inmates in administrative segregation and protective custody."

The Second Circuit, in applying Sandin v. Conner, supra, has

stated that

> [f]actors relevant to determining whether the plaintiff
> endured an 'atypical and significant hardship' include
> 'the extent to which the conditions of the disciplinary
> segregation differ from other routine prison condi-
> tions' and 'the duration of the disciplinary segrega-
> tion imposed compared to discretionary confinement.'
> Wright v. Coughlin, 132 F.3d 133, 136 (2d Cir. 1998).

> Our cases 'make clear that duration is not the
> only relevant factor.  The conditions of confinement
> are a distinct and equally important consideration in
> determining whether a confinement in SHU rises to the
> level of 'atypical and severe hardship . . . .'" Ortiz
> v. McBride, 323 F.3d 191, 195 (2d Cir. 2003) (per
> curiam).  "Both the conditions and their duration must
> be considered, since especially harsh conditions en-
> dured for a brief interval and somewhat harsh condi-
> tions endured for a prolonged interval might both be
> atypical." Sealey v. Giltner, 197 F.3d 578, 586 (2d
> Cir. 1999) (citation omitted).  Accordingly . . . we
> have explicitly avoided a bright line rule that a
> certain period of SHU confinement automatically fails
> to implicate due process rights.  See Sims v. Artuz,
> 230 F.3d 14, 23 (2d Cir. 2000); Colon v. Howard, 215
> F.3d 227, 234 (2d Cir. 2000).  Instead, our cases
> establish the following guidelines for use by district
> courts in determining whether a prisoner's liberty
> interest was infringed.  Where the plaintiff was con-
> fined for an intermediate duration-between 101 and 305
> days-'development of a detailed record' of the condi-
> tions of the confinement relative to ordinary prison

21

conditions is required. <u>Colon</u>, 215 F.3d at 232; <u>accord</u>
<u>Sims</u>, 230 F.3d at 23 ("[W]e have characterized segrega-
tive sentences of 125-288 days as relatively long, and
thus necessitating specific articulation of . . .
factual findings before the district court could prop-
erly term the confinement atypical or insignificant."
(citations and internal quotation marks omitted)).  In
those situations, a district court must "make a
fact-intensive inquiry," <u>Sims</u>, 230 F.3d at 22, examin-
ing "the actual circumstances of SHU confinement" in
the case before it without relying on its familiarity
with SHU conditions in previous cases, <u>Kalwasinski v.</u>
<u>Morse</u>, 201 F.3d 103, 106 (2d Cir. 1999) (per curiam).

<u>Palmer v. Richards</u>, 364 F.3d 60, 64-65 (2d Cir. 2004); <u>Hanrahan</u>
<u>v. Doling</u>, 331 F.3d 93, 97-98 (2d Cir. 2003) (<u>per</u> <u>curiam</u>).

"[R]estrictive confinements of less than 101 days do
not generally raise a liberty interest warranting due process
protection, and thus require proof of conditions more onerous
than usual." <u>Davis v. Barrett</u>, 576 F.3d 129, 133 (2d Cir. 2009),
<u>citing</u> <u>Colon v. Howard</u>, 215 F.3d 227, 231-32 & n.5 (2d Cir.
2000).  However, the Second Circuit has concluded "that SHU
confinements of fewer than 101 days 'could constitute atypical
and significant hardships if the conditions were more severe than
the normal SHU conditions . . . or a more fully developed record
showed that even relatively brief confinements under normal SHU
conditions were, in fact, atypical.'" <u>Davis v. Barrett</u>, <u>supra</u>,
576 F.3d at 133, <u>quoting</u> <u>Palmer v. Richards</u>, <u>supra</u>, 364 F.3d at
65.

22

I conclude that plaintiff's claim that his Due Process rights were violated by the administrative hearing is unlikely to succeed.  First, plaintiff's alleged stay in SHU, as of the time he signed his complaint, was 89 days -- short of the 101 days that are considered of "intermediate duration."[2]  Moreover, plaintiff has failed to allege any facts whatsoever showing his confinement represented an atypical hardship.  Plaintiff does not state what penalty was imposed by the guilty verdicts, and he does not put forth any evidence as to the conditions of his confinement.  Thus, I conclude that plaintiff's confinement in SHU was likely not an atypical hardship, and I therefore conclude that plaintiff's Due Process rights were likely not violated.[3]

---

[2]By the time he moved for the appointment of counsel, on August 18, 2010, plaintiff alleged he was on "keeplock status," which is a less restrictive status than confinement in SHU (Application for the Court to Request Counsel, at ¶ 2).  Webster v. Fischer, 694 F. Supp. 2d 163, 176 n.11 (N.D.N.Y.), aff'd, 398 F. App'x 683 (2d Cir. 2010)

[3]To the extent plaintiff is alleging the deprivation of a property interest in the $25.00 he was ordered to pay in restitution because of the guilty verdicts, at least one court has held this could "constitute[] an atypical and significant hardship under".  See Barone v. Hatcher, 984 F. Supp. 1304, 1311-12 (D. Nev. 1997).  In such situations, the due process mandated under Wolff v. McDonnell, 418 U.S. 539, 564-65 (1974), is the requirement that prison officials provide plaintiff "a statement of the evidence and reasons relied upon by the disciplinary panel that ordered restitution."  Barone v. Hatcher, supra, 984 F. Supp. at 1312 (citation omitted).  Because plaintiff did receive disciplinary reports detailing the charges against him and has offered no evidence that defendants failed to provide a statement
(continued...)

To the extent that plaintiff is alleging a violation of Due Process because the disciplinary charges were false, I conclude that this claim is unlikely to succeed based on the present record.  Plaintiff claims that he was "falsely accused of a crime" (Complaint at V.).  However, it is unclear if he is referring to the assault charge in New York State court or the disciplinary charges of which he was found guilty.  In any event, plaintiff contends that the disciplinary reports were procedurally flawed and erroneous (Complaint at II.D.).  He claims that in a subsequent hearing, he was unable to call any witnesses on his behalf or offer videotaped evidence.

If an inmate is "afforded a fair opportunity to refute" disciplinary charges, an allegation that such charges were false cannot support a Due Process claim.  Livingston v. Kelly, 2011 WL 2006882 at *1 (2d Cir. May 24, 2011) (unpublished), citing Freeman v. Rideout, 808 F.2d 949, 953 (2d Cir. 1986); see also Jones v. Coughlin, 45 F.3d 677, 679 (2d Cir. 1995).  However, a Due Process claim based on the filing of false misconduct charges may lie where an inmate "was unfairly denied the right to call key witnesses in defense of the charges against him."  Livingston

---

[3](...continued)
of the evidence or failed to provide the reasons the disciplinary panel ordered restitution, I conclude that plaintiff is also unlikely to prevail on this claim.

v. Piskor, 153 F. App'x 769, 771 (2d Cir. 2005), quoting Jones v.
Coughlin, supra, 45 F.3d at 679; accord Livingston v. Kelly,
supra, 2011 WL 2006882 at *1.

Plaintiff has not offered any evidence concerning how
the disciplinary hearing was conducted.  Although plaintiff
claims he was unable to call witnesses, he acknowledges that he
was found not guilty of one of the four charges -- causing
substantial bodily injury to a correctional officer -- albeit on
a "technicality."  He vaguely states that "[e]very one who had
witnessed that incident . . . are [sic] aware of what had really
taken place" during his altercation with Garrett (Complaint at
II.D.).  He also states in conclusory fashion that "Captain
Rhodes and Warden Amicucci both know that I am not guilty of any
of the charges" and that "I have the proof to substantiate my
innocence of all the charges that were written against me"
(Complaint at II.D.).  Based on the present record, I conclude
that plaintiff is also unlikely to succeed here.  His statements
are vague or conclusory as to what potential witnesses know or
would testify to, and, thus, I cannot conclude that he was
unfairly denied the right to call key witnesses.  Furthermore,
the disciplinary hearing's finding that plaintiff was not guilty
on one of the four charges suggests that plaintiff was able to
refute the charges.  Taken together, the evidence plaintiff

25

offers at this time cannot demonstrate that he was denied "a fair opportunity to refute" all charges against him.

In summary, because I conclude that plaintiff's Due Process claim seems unlikely to be of substance or to have "some chance of success," Ferrelli v. River Manor Health Care Ctr., supra, 323 F.3d at 204 (citation omitted), his motion is denied with respect to this claim.

b.   Cruel and Unusual
Punishment Claim

I conclude that plaintiff's final claim, that confinement in SHU represented cruel and unusual punishment, is also unlikely to succeed.  It is well-established that segregated confinement is not, in and of itself, a cruel and unusual punishment.  Hutto v. Finney, 437 U.S. 678, 686 (1978) ("It is perfectly obvious that every decision to remove a particular inmate from the general prison population for an indeterminate period could not be characterized as cruel and unusual."); Sostre v. McGinnis, 442 F.2d 178, 192 (2d Cir. 1971) (en banc), overruled on other grounds as recognized by Davidson v. Scully, 114 F.3d 12, 15 (2d Cir. 1997) (per curiam) ("It is undisputed . . . that segregated confinement does not itself violate the Constitu-

tion."). The Second Circuit has held that in order for a plain-
tiff

> [t]o demonstrate that the conditions of his confinement
> constitute cruel and unusual punishment, the plaintiff
> must satisfy both an objective test and a subjective
> test. First, the plaintiff must demonstrate that the
> conditions of his confinement result in unquestioned
> and serious deprivations of basic human needs. Second,
> the plaintiff must demonstrate that the defendants
> imposed those conditions with deliberate indifference.

Welch v. Bartlett, 125 F. App'x 340, 342 (2d Cir. 2005), quoting

Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996) (internal

citations and quotation marks omitted).

Plaintiff offers no evidence that he suffered serious

deprivation of his basic human needs, nor does he offer evidence

that defendants subjected him to such conditions with deliberate

indifference. His description of his confinement in SHU is

limited to the statement that he was placed there following the

altercation with Garrett and another conclusory statement that

"they refuse to release me from the S.H.U. and endanger[] my

health and safety" (Complaint at II.D.). He appears to be

arguing that his segregation alone represents cruel and unusual

punishment, which is contrary to controlling authority. Because

plaintiff does not describe how his health and safety are endan-

gered, I conclude that this claim is unlikely to succeed.

Because I conclude that plaintiff's claim seems unlikely to be of

substance or have "some chance of success," <u>Ferrelli v. River</u>
<u>Manor Health Care Ctr.</u>, <u>supra</u>, 323 F.3d at 204 (citation omit-
ted), his motion is denied with respect to this claim.

IV.   <u>Conclusion</u>

Accordingly, for all the foregoing reasons, peti-
tioner's motion for the appointment of counsel is denied without
prejudice to renewal.  Any renewed application should be accompa-
nied by an affidavit establishing the merits.

Dated:  New York, New York
        September 1, 2011

                              SO ORDERED

                              _____
                              HENRY PITMAN
                              United States Magistrate Judge

Copies mailed to:

Mr. Owen Q. McAllister, Sr.
10-A-1321
Elmira Correctional Facility
1879 Davis Street
P.O. Box 500
Elmira, New York  14902

Mr. Owen Q. McAllister, Sr.
10-A-1321
Downstate Correctional Facility
Box F
121 Red Schoolhouse Road
Fishkill, New York  12524-00445

                              28

Christie L. D'Alessio, Esq.
Assistant County Attorney of Counsel
Westchester County Attorney's Office
600 Michaelian Office Building
148 Martine Avenue
White Plains, New York  10601